UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEANDER ROBINSON,

      Plaintiff,                      Civil Action No. 18-13263

v.                                   HON.  MATTHEW F. LEITMAN
                                   U.S. District Judge
                                   HON. R.  STEVEN WHALEN
NANCY A. BERRYHILL,            U.S. Magistrate Judge
ACTING COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

## **REPORT AND RECOMMENDATION**

Plaintiff Leander Robinson ("Plaintiff") brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Supplemental Security Income ("SSI") under the Social Security Act.   Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below,  I recommend that Plaintiff's Motion for Summary Judgment [Docket #10] be GRANTED to the extent that the case be remanded to the administrative level for further proceedings, and that Defendant's Motion for Summary Judgment [Docket #12] be DENIED.

## I.  PROCEDURAL HISTORY

On December 18, 2015, Plaintiff filed an application for SSI, alleging disability as of October 12, 2015 (Tr. 126).  After the initial denial of the claim, Plaintiff requested an administrative hearing, held on October 12, 2017 in Oak Park, Michigan before Administrative Law Judge ("ALJ") Timothy C. Scallen (Tr. 14, 26).  Plaintiff, represented by attorney Salena Choice, testified (Tr. 29-39), as did  Vocational Expert ("VE") Helen F. Topcik (Tr. 39-47).  On March 9, 2018, ALJ  Scallen found that Plaintiff was not disabled (Tr. 14-21).  On August 28, 2018, the Appeals Council denied review (Tr. 1-3).  Plaintiff filed for judicial review of the final decision on October 18, 2018.

## II. BACKGROUND FACTS

Plaintiff, born October 25, 1959, was 58 when the ALJ issued his decision (Tr. 21, 126).  He received a GED and worked previously as a school hall monitor and mental health technician (Tr. 156-157). In his application for benefits, he alleges disability due to a heart attack, breathing problems, fatigue, chest pain, right leg numbness, dizziness, and depression (Tr. 155).

### A.    Plaintiff's Testimony

Plaintiff offered the following testimony:

His last job before stopping work in October, 2015 was at a health facility for senior citizens (Tr. 29).  Although the facility was for mental health problems, his job was to provide the patients with physical assistance (Tr. 30).  His job also required shoveling snow,

mopping, and cleaning, and required him to lift up to 40 pounds (Tr. 30).  He stopped working after experiencing a heart attack in October, 2015 (Tr. 31).  After the heart attack, he had a cardiac stent and defibrillator implanted (Tr. 31).  Since the surgeries, he experienced anxiety, fatigue, and some shortness of breath (Tr. 31).  He took blood thinners, aspirin, and cholesterol-reducing drugs (Tr. 32).  He experienced the medication side effect of a "needle and pin" sensation in his right leg (Tr. 33).  Since undergoing surgery, he no longer shoveled snow, mowed grass, or performed other high exertion activities (Tr. 34).  He was unable to lift more than 15 pounds, sit for more than one hour, or stand for more than 30 minutes (Tr. 34).  He needed to sit for 10 minutes after standing for 30 (Tr. 34).  He was unable to walk more than two blocks without experiencing fatigue (Tr. 34).  He was unable to ascend or descend more than one flight of stairs (Tr. 35).  He had not attempted to stoop, kneel, crouch, or crawl since the heart attack (Tr. 35).  He did not experience problems using his upper extremities or taking care of his personal needs (Tr. 36).  He performed minimal household chores but was able to grocery shop with his wife (Tr. 36).  He did not perform outdoor chores (Tr. 37).  He spent most of his day watching television and occasionally performed a light household chore (Tr. 37).

In response to questioning by his attorney, Plaintiff reported that he did not sleep more than four hours altogether at night (Tr. 37). He experienced between three and four bad days a month due to anxiety and stress resulting from his physical limitations (Tr. 38).  He coped with anxiety and stress by reading the Bible (Tr. 38).

**B.      Medical Evidence**

**1. Treating Sources**

On October 9, 2015, Plaintiff sought emergency treatment for shortness of breath (Tr. 240, 253).  Blood testing was positive for a myocardial infarction (Tr. 246).  A chest x-ray was consistent with a diagnosis of congestive heart failure (Tr. 262).  A catheterization showed an artery wall abnormality requiring a cardiac stent implantation (Tr. 315).

Followup records from the next month note Plaintiff's denial of shortness of breath and the ability to walk up to two blocks without symptoms (Tr. 315).  A physical examination was unremarkable (Tr. 316).  Later the same month, Redman Uddin, M.D. noted Plaintiff's report of lower extremity numbness and fatigue (Tr. 329-330).

In January, 2016, Ahmed Rashed, M.D. completed an assessment of Plaintiff's physical abilities, noting the symptoms of shortness of breath on exertion and chest pain but a "good" prognosis with medical treatment (Tr. 343).  He found that Plaintiff could sit for up to four hours and stand/walk for two in an eight-hour workday (Tr. 344).  He found that Plaintiff would be required to walk for five minutes every ninety minutes and would require unscheduled breaks every three to four hours (Tr. 344).  He found that Plaintiff could lift 10 pounds frequently and 20 occasionally (Tr. 344).  He limited Plaintiff to occasional postural activity except for frequent twisting (Tr. 345).  He found that Plaintiff would be limited to gross and fine manipulative activity 50 percent of the workday and would be absent from work three days a month (Tr. 345).

-4-

June, 2016 treating records following a defibrillator implantation note Plaintiff's denial of edema, chest pain, palpitation, or problems with the device (Tr. 378, 438, 466). Plaintiff reported that he could walk one to two blocks (Tr. 378). Followup notes from the next month reflect similar findings (Tr. 406, 456). January, 2017 records note that following the 2015 stent placement, Plaintiff's ejection fraction did not improve, leading to the implantation of the defibrillator (Tr. 420). Plaintiff denied edema, chest pain, palpitations, or dizziness (Tr. 420, 447). May, 2017 records by Mobeen ur Rehman, M.D. note that Plaintiff was asymptomatic and was able to walk for over a mile each day (Tr. 441).

## 2. Non-Treating Sources

In April, 2016, Dr. Cynthia Shelby-Lane performed a consultative physical examination, noting Plaintiff's report that he currently had an "ejection fraction" of 10 to 20 percent and was scheduled for a defibrillator implantation the following month (Tr. 349). He reported the side effect of right lower extremity radiculopathy and neuropathy resulting from the use of anti-cholesterol medication (Tr. 349). He reported a history of chronic shortness of breath and depression, adding that he had not received treatment for depression (Tr. 350).

Dr. Shelby-Lane noted that Plaintiff was able to get on and off the examining table slowly, squat to 70 percent, and bend to 80 percent (Tr. 351). She noted normal range of motion studies except for a limited range of bilateral forward flexion of the hips (Tr. 353). A neurologic examination was unremarkable (Tr. 351). She opined that Plaintiff required

a mental health evaluation "per DDS regarding . . . depression" (Tr. 351). She noted no manipulative limitations (Tr. 355). A June, 2016 pulmonary function report notes that Plaintiff had just had a defibrillator implanted (Tr. 366).

In July, 2016, Twaide Langham, D.O. performed a non-examining assessment of the treating records on behalf of the SSA, finding that due to chronic pulmonary insufficiency and joint dysfunction (Tr. 57), Plaintiff was limited to lifting/carrying 20 pounds occasionally and 10 frequently; sitting, standing, and walking for six hours in an eight-hour workday; and pushing and pulling without limitation (Tr. 58). Dr. Langham also limited Plaintiff to occasional postural activity (Tr. 59).

### C. Vocational Expert Testimony

Plaintiff testified that his work as a "teacher's aide" required him to monitor the lunch rooms and school halls (Tr. 40). VE Topcik noted that by Plaintiff's description, the work did not constitute a teacher aide position (Tr. 41). She found that his work was more properly classified as a monitor position and that the "closest" job would be school bus monitor[1] which she classified as exertionally light and unskilled[2] (Tr. 41). The VE testified

---

[1]*Dictionary of Occupation Titles* ("*DOT*") Code: 372.667-042.

[2]

20 C.F.R. §§ 404.1567(a-d), 416.967(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

that Plaintiff's former work as a mental health technician was exertionally medium and semiskilled, and work as a housekeeper, medium/unskilled (Tr. 44).

The ALJ then posed following set of restrictions, taking into account Plaintiff's age, education, and work history:

> [L]ight [exertional] level, limited to occasional climbing of stairs and ramps, as well as ropes ladders and scaffolds . . . limited to occasional stooping, kneeling, crouching and crawling.  With just those limitations alone, could he do his past work? (Tr. 57-58).

Based on the above restrictions, the VE testified that the hypothetical individual could perform his past relevant work as a school bus monitor (Tr. 46). She stated that the need to miss two or more days of work each month would preclude all competitive employment (Tr. 47).

### D.    The ALJ's Decision

Citing Plaintiff's treating records, ALJ Scallen found that Plaintiff experienced the severe impairments of "congestive heart failure, coronary artery disease, and aschemic cardiomyopathy status/post imocardial infarction and stent placement" but that none of the impairments met or equaled a listed impairment found in 20 CF.R. Part 404, Subpart P, Appendix 1 (Tr. 16).  The ALJ found that the record did not support the finding that the alleged condition of depression was a medically determinable impairment (Tr. 16).  He found that Plaintiff retained the Residual Functional Capacity ("RFC") for exertionally light work with the following additional limitations:

> [C]laimant can occasionally climb stairs, ladders, ropes; and scaffolds; he can

occasionally stoop, kneel, crouch, and crawl (Tr. 17).

Citing the VE's findings, the ALJ found that Plaintiff could perform his former job of hall monitor (school bus monitor) (Tr. 20, 46).

The ALJ discounted the allegations of disability, noting that while Plaintiff suffered a heart attack in October, 2015, he had "a completely normal examination" in June, 2016 after the implantation of the defibrillator (Tr. 18). He cited Plaintiff's May, 2017 report to a physician that he could walk for over an hour and a "perfectly normal" physical examination (Tr. 19). He accorded "some weight" to Dr. Ahmed's treating assessment, adopting the finding that Plaintiff could perform light work but rejecting the finding that he would be absent three days each month (Tr. 19).

### III. STANDARD OF REVIEW

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, — U.S. —, 139 S.Ct. 1148, 1154 (2019)(punctuation altered)(*citing Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938))(emphasis deleted). The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. *Biestek* at 1152; 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Commissioner of Social Sec.*, 486 F.3d 234,

241 (6th Cir. 2007)(*citing Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.1994)).

The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(*en banc*). Where substantial evidence supports the ALJ's decision, the reviewing court "defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Commissioner Of Social Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)(*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)).    However, in determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV. FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence,

whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## V. ANALYSIS

Plaintiff makes three arguments for remand, contending first that the ALJ failed to provide adequate reasons for discounting the allegations of disability.  Second, he disputes the Step Three finding that his heart condition did not meet or medically equal an impairment listed in 20 CF.R. Part 404, Subpart P, Appendix 1 (Tr. 16).  Third, he takes issue with the Step Four finding that he could return to his past relevant work as a school bus monitor, arguing that his earnings from the school position did not reach the level of past relevant work.

### A.  The ALJ's Consideration of the Subjective Complaints

In his first argument, Plaintiff takes issue with the rejection of his claims of physical limitation.  ECF No. 10, PageID.524.  Specifically, he contends that the ALJ failed to consider the alleged medication side effect of numbness and tingling of the right lower

-10-

extremity.  ECF No. 10, PageID.526.  He argues that his right leg restriction prevents him from performing light work.  *Id.*

SSR 16–3p sets forth the standard for evaluating the alleged limitations using a two-step process. 2016 WL 1119029, at *3 (Mar. 16, 2016).  First, the ALJ determines whether the claimant has a medically-determinable impairment that could reasonably be expected to produce the alleged pain or limitation.  *Id.* at *3.  Second, the ALJ must evaluate claims of limitation not reflected in the objective evidence.  SSR 16-3p at *3-4.  The ALJ must consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.[3]  In other words, the ALJ must consider whether the record as a whole reflects the claimant's professed degree of

---

[3]

In addition to an analysis of the medical evidence, 20 C.F.R. §§ 404.1529(c)(3), 416.929 list the factors to be considered in making a credibility determination:

(i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

limitation.[4]

Plaintiff's argument that the ALJ failed to consider the alleged medication side effect of right leg numbness as required by 20 C.F.R. §§ 404.1529(c)(3), 416.929 does not provide grounds for remand.  First and most obviously, the ALJ acknowledged the claims of right leg symptoms in his summation of Dr. Shelby-Lane's consultative findings (Tr. 18).  Second, even assuming that the ALJ omitted mention of the alleged side effect, a remand would not be warranted.  While Plaintiff testified that he experienced the right leg symptoms ("needles, prickly"), he did not state that the condition caused any degree of exertional limitation (Tr. 33).  Third, at a minimum, substantial evidence supports the right leg symptoms did not create significant limitations.  The ALJ noted that shortly after the June, 2016 defibrillator implantation, a physical examination was unremarkable and that in May, 2017, Plaintiff had "a perfectly normal" physical examination (Tr. 18).  Aside from the reasons provided by the ALJ, I note that Dr. Shelby-Lane's neurologic examination revealed no abnormalities (Tr. 351).

Because the ALJ's discussion and findings regarding the subjective complaints are supported by record as a whole, a remand on this basis is not warranted.  *See Cruse v.*

---

[4]In contrast to a recently rescinded ruling regarding the evaluation of the subjective symptoms, (SSR 96-7p), SSR 16-3p eliminates the use of the term "credibility" from SSA policy. SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016).  The Ruling states that "subjective symptom evaluation is not an examination of an individual's character." Instead, ALJs are directed to "more closely follow [the] regulatory language regarding symptom evaluation." *Id.*; *See* 20 C.F.R. §§ 404.1529, 416.929.

*Commissioner of Social Security*, 502 F.3d 532, 542 (6th Cir. 2007)(*citing Walters v. Commission of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997))(ALJ's findings regarding the allegations of limitation  entitled to "great weight").

### B.  The ALJ's Step Three Analysis

In his second argument, Plaintiff takes issue with the Step Three findings, arguing that the ALJ erred by failing to consider whether he met or medically equaled Listing 4.02.  ECF No. 10, PageID 527; 20 C.F.R. Part 404, Subpart P, App. 1, § 4.02 (*Chronic heart failure*). Citing *Smith-Johnson v. Commissioner of Social Sec.,* 579 Fed.App'x 426, 432 (6th Cir. March 29, 2014), he notes that "where the record raises a substantial question as to whether the claimant could qualify as disabled under a listing," the ALJ should discuss the listing. Plaintiff notes that his ejection fraction of 25 to 30 percent, also mentioned in Listing 4.02, warrants a discussion of requirements for disability under the Listing.[5]  *Id.*

"Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be 'severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.'" *Reynolds v. Commissioner of Social Sec.*, 424 Fed.Appx. 411, 414, 2011 WL 1228165, *2

---

[5]

"Ejection fraction" is a measure of the left ventricle's ability to pump blood. *Diamond v. Commissioner of Social Sec.* 154 Fed.Appx. 478, 480, 2005 WL 3077132, * 1 (6th Cir. November 16, 2005).  "A normal ejection fraction is greater than 55 percent, and an ejection fraction of below 30 percent, when accompanied by other symptoms, qualifies as a presumptive disability under the Act." *Id.*; 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.02B (2005).

(6th Cir. April 1, 2011). At Step Three of the administrative sequence, "[a] Claimant who meets the requirements of a Listed Impairment will be deemed conclusively disabled [ ] and entitled to benefits." At Step Three, the claimant must satisfy all of listing's criteria for a finding that s/he meets a listed impairment. *See Duncan v. Sec'y of Health & Human Servs*., 801 F.2d 847, 855 (6th Cir. 1986); *Houston v. Colvin*, 2017 WL 82976, at *2 (E.D. Mich. January 10, 2017)(Drain, J.)(same). Moreover, Plaintiff bears the burden of establishing that he meets or medically equals a listed impairment. *Buress v. Sec'y of Health & Human Servs*., 835 F.2d 139, 140 (6th Cir. 1987).

The requirements of Listing 4.02 (*Chronic heart failure*) are stated in relevant part:

Chronic heart failure while on a regimen of prescribed treatment, with symptoms and signs described in 4.00D2. The required level of severity for this impairment is met when the requirements in both A and B are satisfied.

A. Medically documented presence of one of the following:

1. Systolic failure (see 4.00D1a(i) ), with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure); or

2. Diastolic failure (see 4.00D 1a(ii) ), with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability (not during an episode of acute heart failure);

　　　　　AND

B. . . .

1. Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily

-14-

living in an individual for whom an MD, preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual; or

2. Three or more separate episodes of acute congestive heart failure within a consecutive 12-month period (see 4.00A3e), with evidence of fluid retention (see 4.00D2b(ii) ) from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization (see 4.00D4c); or

3. Inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less due to:

a. Dyspnea, fatigue, palpitations, or chest discomfort; or

b. Three or more consecutive premature ventricular contractions (ventricular tachycardia), or increasing frequency of ventricular ectopy with at least 6 premature ventricular contractions per minute; or

c. Decrease of 10 mm Hg or more in systolic pressure below the baseline systolic blood pressure or the preceding systolic pressure measured during exercise (see 4.00D4d) due to left ventricular dysfunction, despite an increase in workload; or

d. Signs attributable to inadequate cerebral perfusion, such as ataxic gait or mental confusion.

20 C.F.R. Part 404, Subpart P, App. 1, § 4.02.

Plaintiff is correct that although the ALJ found the severe impairment of congestive heart failure at Step Two of the administrative analysis (Tr. 16), he failed to discuss Listing 4.02 or any other of the severe impairments at Step Three (Tr. 17).  Defendant acknowledges that the ALJ did not provide any Step Three discussion of cardiac condition, but argues that because Plaintiff's attorney at the hearing did not contend that her client met or equaled a

listed impairment, the Step Three argument is now waived.  ECF No. 12, PageID.570.

Even a cursory comparison of the Listing and medical evidence supports the finding that Plaintiff does not meet both parts A and B of the Listing.  While Plaintiff demonstrated a reduced ejection fraction, substantial evidence contradicts the  part B. requirement that the heart failure "seriously limit[ed] the ability to independently initiate, sustain, or complete activities of daily living." As discussed above, during the relevant period Plaintiff denied symptoms of cardiovascular disease on multiple occasions and reported that he was able to walk for an hour at a time (Tr. 378, 438, 466).  Notwithstanding the seriousness of his condition as of October, 2015, he reported as early as June, 2016 following the implantation of a defibrillator that he did not experience chest pain or heart palpitations and was able to walk up to two blocks at a stretch (Tr. 378).  As such, he cannot show disabling symptoms lasting at least 12 months as required for a disability finding.  42 U.S.C. §423(d)(1)(A).

While Plaintiff also argues that he medically equals the Listing, he does not cite the applicable regulation describing the requirements for  equivalency, much less any evidence that he meets the criteria for an equivalency finding.  § 416.926(a).[6]  Notwithstanding the

---

However, Defendant's argument that SSR 17-2p applies to the present Step Three analysis is not well taken.  SSR 17-2p, 2017 WL 3928306, at *3-4 (March 27, 2017)(ALJ "responsible for the finding of medical equivalence" which must be based on "the preponderance of the evidence in the record").  Because Plaintiff filed for benefits before March 27, 2017, SSR 96-6p applies. 1996 WL 374180, at *3 (July 2, 1996)("longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence" at Step Three).  "The ALJ was obliged to apply the rules in effect when the claim was filed." *O'Brien v. Commissioner of Soc. Sec.,* 2019 WL 5162859, at *3 (E.D.Mich. September 23, 2019)(citing *Atchley v. Berryhill,* No.

deficiencies of the Step Three analysis, the ALJ later noted that Plaintiff had a "perfectly normal" physical examination and did not experience cardiac symptoms. *See Bledsoe v. Barnhart*, 165 Fed.Appx. 408, 411, (6th Cir. January 31, 2006)(failure to properly articulate Step Three finding can be cured by a discussion of the evidence supporting the finding at earlier or subsequent steps in the sequential analysis).

Nevertheless, the ALJ's Step Three "analysis" is patently inadequate. Instead of citing the listings applicable to the cardiac conditions that the ALJ found to be "severe impairments," (Tr. 16), he cited listings for conditions not included with the severe impairments (Tr. 17), evidently conflating what ought to have been the Step Three analysis with his Step Two discussion of which impairments he found non-severe (Tr. 17). As such, the analysis contains no discussion of why the impairments found to be severe at Step Two did not result in a finding of disability at Step Three. The Court is unaware of any case or

---

15-5081, 2018 WL 1135457, at *5 (D.S.D. Fed. 28, 2018)). Defendant concedes that the record does not contain an equivalence opinion by a physician.

It is nonetheless unclear whether Plaintiff is able to show equivalency. Even under the stringent standards set forth in SSR 96-6p, where the claimant cannot make a reasonable showing that he medically equals a listed impairment, the failure to obtain an equivalency opinion does not constitute grounds for remand. *See Smith v. Commissioner of Social Sec.*, 2019 WL 3243768, at *5 (E.D. Mich., June 30, 2019)(Davis, M.J.)(adopted, 2019 WL 3239252 (E.D. Mich. July 18, 2019)(*citing Lusk v. Commissioner of Social. Sec*., 106 Fed. Appx. 405, 411 (6th Cir. 2004)). "It is the claimant's burden at this third step in the sequential evaluation to bring forth evidence to establish that he or she meets or equals a listed impairment." *Retka v. Commissioner of Social Sec*., 1995 WL 697215, at *2, 70 F.3d 1272 (6th Cir. November 22,1995)(*citing Evans v. Secretary of Health and Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987)).

regulatory law that allows the ALJ to skip an entire step of the administrative analysis on the basis that the claimant failed to raise a corresponding claim at the administrative level.

Given that the ALJ's Step Four findings, discussed below, contain clearly reversible error, the Court need not determine whether the Step Three errors constitute adequate and independent grounds for remand, but the ALJ must nevertheless correct these errors on remand.

### C. The Step Four Findings

Last, Plaintiff disputes the Step Four finding that he could perform his past relevant work as a school bus monitor, arguing that his earnings from the position did not rise to the level of Substantial Gainful Activity.  ECF No. 10, PageID.530.

At Step Four of the administrative analysis, a three-prong test must be met in order to find that a claimant can return to her past relevant work: "(1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental demands of the past job; and (3) a finding of fact that the individual's RFC permits a return to that past job." SSR 82–62, 1982 WL 31386, *2 (1982).   As a general rule, the Step Four determination can be supported by the finding that claimant can perform his past relevant work as "actually performed,"  or, "as generally required by employers throughout the national economy." SSR  82–61, 1982 WL 31387, *2 (1982).   In most cases, the claimant "bears the burden of proving the existence and severity of limitations caused by [the] impairments and the fact that [he] is precluded from performing h[is] past relevant work" either as previously performed

or as generally required in the national economy. *Jones v. Commissioner of Social. Sec.,* 336 F.3d 469, 474 (6th Cir.2003).   The former job is considered past relevant work "when it was done within the last 15 years, lasted long enough . . . to learn to do it, and was substantial gainful activity ["SGA"]." §§ 404.1565(a), 416.965(a).   "For an employee, the primary factor in determining whether his or her past work is SGA "will be the earnings [the employee] derive[d] from the work activity." §§ 404.1574(a)(1), 416.974(a)(1).   "Earnings can be a presumptive, but not conclusive, sign of whether a job is substantial gainful activity." *See Le v. Astrue*, 540 F.Supp.2d 1144, 1148–49 (C.D.Cal. February 4, 2008)("[R]ebuttable presumption that the employee either was or was not engaged in SGA if his or her average monthly earnings are above or below a certain amount established by the Commissioner[]").

The parties agree that the relevant monthly thresholds for SGA in 2006, 2007, and 2008 (years that Plaintiff worked for the Detroit Public Schools) were $860, $900, and $940, respectively. https://www.ssa.gov/OACT/COLA/sga.html. (Last visited October 22, 2019). The earnings records show that Detroit Public Schools paid Plaintiff $2,736.57 in 2006, $3502.50 in 2007, and $1943.37 in 2008 (Tr. 146).   As stated in Plaintiff's Certified Earnings Records, the work in question was performed during only two quarters (six months) of that year (Tr. 138).   Dividing his 2006 half-year earnings of $2735.57 by six months comes to $456.01 each month - well below the SGA threshold.   Likewise, in 2007, the $3502.50 earned over the course of three quarters months averages only $389.17 for each of the nine months, and 2008, $1943.37 over 12 months (but assuming for school year only

eight months) averages only $242.92 each month.

Defendant attempts to rescue the ALJ's Step Four finding by citing Plaintiff's report that the job in question was performed eight hours each day five days a week at the rate of eight dollars an hour.  ECF No. 12, PageID.580; (Tr. 192).  Defendant notes that working full-time at that rate would have amounted to $1,280 a month "which comfortably exceeds the monthly thresholds" for all three years. ECF No. 12, PageID.580.  However, Defendant's premise that Plaintiff actually performed SGA by working in shorter, discrete stints within the reported quarters (two months at a time, for example) is wholly speculative. Assuming the accuracy of Plaintiff's estimate of his earnings, it is equally likely that he worked only two weeks or less within each one-month period, which would place his monthly earnings well below the  SGA.  §§ 404.1565(a), 416.965(a).  At a minimum, Defendant has not overcome the presumption that the Certified Earnings Records show that the average earnings did not amount to SGA.  *See Le*, *supra,* 540 F.Supp.2d at 1148–49; §§ 404.1574(a)(1), 416.974(a)(1).  The failure to establish that the earnings from the past work amount to SGA defeats the ALJ's Step Four finding that Plaintiff could perform his past relevant work.

The question of whether Plaintiff was capable of performing his past relevant work is critical.   Plaintiff, 55 at the time of the alleged onset, was of "advanced age." 20 C.F.R. § 404.1567.  Medical-Vocational Rule 202.06, 20 C.F.R. part 404, subpart P, App. 2 directs a finding of disability for an individual 55 or over (advanced age) who is unable to perform

any past relevant work and is limited to exertionally light or sedentary, unskilled work. Thus, a finding that Plaintiff was unable to perform any of his past relevant work would direct a finding of disability.

Other errors undermine the finding that Plaintiff was capable of even exertionally light work. While the ALJ "adopted" Dr. Rashed's January, 2016 assessment that Plaintiff could perform exertionally light work, in fact Dr. Rashed found that Plaintiff was limited to sitting for four hours a day and standing/walking for two (Tr. 344). *See* SSR 83-12 (an exertionally light job "requires a good deal of walking or standing"). 1983 WL 31251, at *5 (January 1, 1983); §§ 404.1567(b), 416.967(b). In fact, Plaintiff's inability to perform any combination of walking, standing, or sitting for a total of eight hours a day, if adopted, would have precluded even sedentary work.

Notwithstanding that the non-disability determination contains critical misstatements of the record, an award of benefits is premature. A remand for an award of benefits is appropriate "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Hum. Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). Accordingly, I recommend a remand for further administrative proceedings consistent with this Report.

## VI. CONCLUSION

For the reasons stated above, I recommend that Plaintiff's Motion for Summary Judgment [Docket #10] be GRANTED to the extent that the case be remanded to the

administrative level for further proceedings, and that Defendant's Motion for Summary

Judgment [Docket #12] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days

of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR

72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of

appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v.

Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947

(6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with

specificity will not preserve all the objections a party might have to this Report and

Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v.

Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection #1," "Objection #2," etc., and any

objection must recite *precisely* the provision of this Report and Recommendation to

which it pertains. Not later than 14 days after service of an objection, the opposing party

must file a concise response proportionate to the objections in length and complexity.

The response must specifically address each issue raised in the objections, in the same

order and labeled as "Response to Objection #1," "Response to Objection #2," *etc.*


Dated: October 24, 2019          s/R. Steven Whalen
                                 R. STEVEN WHALEN
                                 UNITED STATES MAGISTRATE JUDGE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on October 24, 2019 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants October 24, 2019.

s/Carolyn M. Ciesla           
Case Manager for the
Honorable R. Steven Whalen

Dated: October 24, 2019